**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| DEBORAH HINES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-00147 (MTT) (CHW) |
| | : | |
| DR. NAZAIRE, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by Defendant Nazaire. Doc. 20. Because Plaintiff failed to exhaust her available administrative remedies, it is **RECOMMENDED** that the Defendant's Motion to Dismiss be **GRANTED** (Doc. 20), Plaintiff's Motion to Appoint Counsel (Doc. 30) be **DENIED**, and that Plaintiff's Complaint be **DISMISSED**.

### I.    BACKGROUND

On April 15, 2014, the Plaintiff filed this 42 U.S.C. § 1983 action against Defendants Dr. Nazaire and Warden Belinda Davis, alleging inadequate provision of medical care at Pulaski State Prison. Doc. 1. Specifically, Plaintiff claims that she discussed a thyroid problem "over and over" with Dr. Nazaire, but Dr. Nazaire never tested her thyroid and instead prescribed incorrect ineffective medication. Plaintiff apparently took this medication for two years and, during this time, her physical condition has deteriorated. Plaintiff has lost weight, her hair has begun to fall out, and her vision has worsened. Docs. 1;7. She states that she presented her complaint to Pulaski State Prison as a grievance, but was told she "could not grieve medical." Doc. 1, p. 3. She also stated that she has a copy of the grievance. *Id*

1

After an initial screening under 28 U.S.C. § 1915A, Warden Davis was dismissed from the case. Docs. 8, 11. The remaining Defendant was served on September 24, 2014, and thus responsive pleadings were due to be filed on or before October 13, 2014. No responsive pleading was filed. On March 10, 2015, the Clerk of Court entered a default.

On March 24, 2015, Defendant Nazaire filed a Motion to Vacate Clerk's Entry of Default (Doc. 19), and filed his Motion to Dismiss on April 1, 2015 (Doc. 20). The Court vacated the Clerk's entry of default, noting that an "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations." Doc. 22; *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002). In his Motion to Dismiss, Defendant argues that Plaintiff's complaint should be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust.

## II. EXHAUSTION

Before this Court may address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted her available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts

outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust her available administrative remedies. *Id.*

A.  <u>Available Administrative Remedies</u>

During the period relevant to this case, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 20-2, pp. 6–28. At step one, a prisoner wishing to file a grievance was required to file no later than 10 calendar days from the date she knew or should have known of the facts underlying her grievance. *Id*. at 12. If this initial grievance was rejected, the prisoner was required to appeal within 7 calendar days. *Id.* at 16. Inmates are provided a notice of the Georgia Department of Corrections grievance policy orally,

and are also given a copy of an Orientation Handbook, which includes instructions about the procedure. Doc. 20-2, p. 3.

In addition to the formal grievance procedure, inmates in the GDOC may also utilize a complaint procedure that complements the formal statewide grievance procedure. Doc. 20-3, p. 3. In accordance with the procedure, all inmates receive an orientation regarding their local health care system. *Id.* at 6. Inmates may use either a Health Services Request Form or handwritten note/letter to submit concerns or complaints. *Id.* The health administrator will investigate the complaint or concern within 7 working days from receipt of the complaint and provide a written reply to the inmate. *Id.*

B. <u>Analysis</u>

In applying *Turner* to this case, Defendant is not entitled to dismissal at step one. Plaintiff states that she filed a grievance in her complaint, though she provides no dates as to what day she filed her grievance in her complaint. *See e.g.* Doc. 1. In fact, Plaintiff contradicts herself, stating first that she was told "she could not grieve medical," but then states that she has a copy of the grievance. Doc. 1, p. 3. Plaintiff, in all her responsive pleadings, has not provided a copy of her alleged grievance, though she states in her amended complaint that "she used the prisoner grievance procedure available at Pulaski State Prison." Doc. 29, p. 3. Plaintiff also states in her Declaration that she "is still waiting on her copies of the grievance." Doc. 33, p. 2. When accepted as true, this allegation indicates that the normal grievance procedure was available to Plaintiff and that she filed a grievance.

The Defendants are entitled to dismissal at *Turner*'s step two, however, based on the evidence in the record.[1] On record are: (i) a copy of Plaintiff's grievance history (Doc. 20-2, p. 29); (ii) the affidavit of Ramika Christian, Deputy Warden of Care and Treatment at Pulaski State Prison (Doc. 20-2, pp. 2-5); (iii) a copy of the Georgia Department of Corrections Standard Operating Procedure for Statewide Grievances (Doc. 20-2, pp. 6-28); (iv) the affidavit of Betty Rogers, Pulaski State Prison Health Services Administrator, which indicates that Plaintiff filed only one health grievance while incarcerated at Pulaski State Prison from 1/12/11 to 2/4/14 (Doc. 20-3, pp. 2-4); and (v) a copy of the Georgia Department of Corrections Standard Operating Procedure for Inmate/Probationer Health Concerns or Complaints (Doc. 20-3, pp. 5-7).

The evidence provided by the Defendant establishes that Plaintiff was very familiar with the grievance process, as she filed six grievances between 01/05/2011 and 07/28/2014. Doc. 20-2, p. 29. It is also apparent that Plaintiff is familiar with the appeal process, as her grievance at Arrendale State Prison, filed on 02/06/2014, was denied on appeal. *Id.* However, Plaintiff's grievance history at Pulaski State Prison shows only one grievance filed for a missing property claim, which was resolved. *Id.* There were no grievances filed related to the provision of medical care. *Id.* at 4.

Betty Rogers, in her affidavit, further states that Plaintiff had also used the procedures outlined in the Georgia Department of Corrections Standard Operating Procedure for Inmate/Probationer Health Concerns or Complaints. Doc. 20-3, p. 4. She states that Plaintiff filed only one health complaint while incarcerated at Pulaski State Prison, concerning a co-pay charge that was imposed even though Plaintiff had refused treatment. Doc. 20-3, p. 4.

---

[1] *Cf. Walker v. Soloman*, No. 5:12-cv-448 (MTT), 2014 WL 2465501 at *1 (M.D. Ga. May 30, 2014).

5

Plaintiff, in her response to Defendant's Motion to Dismiss, states that she submitted an "ante-litem" notice to Dr. Nazaire, Warden Davis, and Chief Counselor Watts (Doc. 23, p. 2). She further states that she verbally complained about her physical condition to Warden Davis and Counselor Watts (Doc. 23, pp. 4-5), sent letters to Warden Davis; (Doc. 23, p. 5), and "filed a grievance at the Counselor's level" (Doc. 23, p. 2). While these complaints do not follow the Standard of Procedure for Statewide Grievance, they also do not follow the Standard Operating Procedure Inmate/Probationer Health Concerns or Complaints. Plaintiff was instructed at an orientation to place health and medical concerns and complaints in the sick call box for processing. Doc. 20-3, p. 7. Plaintiff does not allege that she complied with this procedure, nor does the evidence submitted by Defendant support Plaintiff's allegations.

On a final note, although Plaintiff states that as of May 11, 2015, she is still waiting of copies of her grievance, the evidence before the Court supports the conclusion that Plaintiff never filed the grievance she claims. Further, the parties have had sufficient time to develop the record. *Bryant*, 530 F.3d at 1376. Plaintiff has filed nine documents (Docs. 23; 25; 26; 27; 28; 29; 32; 33; 35) with the Court since Defendant filed his Motion to Dismiss, but has yet to produce the grievance she indicated she had in her possession when she filed the complaint.

Because the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 90, 93–97 (2006), and because the Defendant has met the burden set out by the Eleventh Circuit of demonstrating that Plaintiff did not exhaust her administrative remedies, it is Recommended that Plaintiff's complaint be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust her available administrative remedies, it is **RECOMMENDED** that the Defendant's Motion be **GRANTED** (Doc. 20), Plaintiff's Motion

to Appoint Counsel (Doc. 30) be **DENIED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 2nd day of June, 2015.

          s/ Charles H. Weigle
          Charles H. Weigle
          United States Magistrate Judge