**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| DEBORAH HINES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-00147 |
| | : | |
| DR. BILLY NICHOLS, *et. al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

Before the Court is a Motion to Dismiss filed by Defendants Georgia Correctional Healthcare and Billy Nichols. Doc. 83. Because: (1) the PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 90, 93–97; (2) the Defendants have met their burden of demonstrating that Plaintiff did not exhaust her administrative remedies; and (3) Plaintiff fails to state a claim upon which relief may be granted, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED**.

**I.   BACKGROUND**

On April 15, 2014, Plaintiff filed this 42 U.S.C. § 1983 action against Defendant Dr. Nazaire, alleging inadequate medical care at Pulaski State Prison. Doc. 1. Upon recommendation, Plaintiff's claims against Dr. Nazaire were dismissed because Plaintiff failed to exhaust her administrative remedies before filing her complaint. See Doc. 55. At that point, the Court also considered Plaintiff's amended complaint, and two additional defendants were added to the case: Georgia Correctional Healthcare ("GCHC") and Dr. Billy Nichols. *Id*; see also Doc. 29. In the amendment, Plaintiff alleges that Dr. Nichols is the Medical Director of GCHC and that he is responsible for the operation of GCHC. Doc. 29 at 1. She further alleges that the

1

Defendants hired Dr. Nazaire without a proper background check. Doc. 29 at 1. The Court construed these allegations as claims for deliberate indifference in making a hiring decision, and allowed Plaintiff to move forward with her claims against Dr. Nichols and GCHC. Defendants moved to dismiss Plaintiff's claims, for several reasons, including failure to exhaust her administrative remedies. The record before the Court shows that dismissal of Plaintiff's complaint is appropriate.

## II.   DISMISSAL IS REQUIRED BECAUSE PLAINTIFF FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

Before the Court can address Plaintiff's claims on the merits, it must determine whether Plaintiff exhausted her available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted her available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as

those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the defense of failure to exhaust, courts in this Circuit follow a two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust her available administrative remedies. *Id.*

Also important to this specific case, "when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added). Congress intended to afford prison officials time to address grievances internally before allowing a prisoner to initiate a federal lawsuit. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Thus, even if Plaintiff exhausted her administrative remedies after she filed her complaint, the Court cannot take action on those claims. See 42 U.S.C. § 1997e(a).

*Available Administrative Remedies*

During the period relevant to this case, the Georgia Department of Corrections provided a two-step grievance procedure, which allowed prisoners like Plaintiff to file "a grievance about

any condition, policy, procedure, or action or lack thereof that affects the offender personally," with some limited exceptions. See Doc. 20-2, p. 10. At step one, a prisoner wishing to file a grievance is required to file no later than 10 calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 12. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id*. The Warden must respond within 40 days. *Id.*, p. 20. If this initial grievance is rejected, the prisoner is required to appeal within 7 calendar days. *Id.*, p. 16. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id*.

In addition to the formal grievance procedure, inmates in the GDOC may also utilize a complaint procedure that complements the formal statewide grievance procedure. Doc. 20-3, p. 3. In accordance with the procedure, all inmates receive an orientation regarding their local health care system. *Id.* at 6. Inmates may use either a Health Services Request Form or handwritten note/letter to submit concerns or complaints. *Id.* The health administrator will investigate the complaint or concern within 7 working days from receipt of the complaint and provide a written reply to the inmate. *Id.*

*Analysis*

This Court previously found Plaintiff's claims unexhausted as to Defendant Nazaire, and little has changed since that finding.[1] See Doc. 42; Doc. 55. Plaintiff's complaint cannot be dismissed at step one of *Turner* because her version of the facts, when considered true, allege proper exhaustion. However, Plaintiff's claims against Dr. Nichols and GCHC must be dismissed at step two. See *Turner*, 541 F.3d at 1082.

---

[1] Plaintiff presents one additional piece of information for the Court to consider: a settlement letter allegedly from Betty Rogers, confirming that Plaintiff exhausted her administrative remedies, and offering her $250,000.00 to drop her lawsuit. Doc. 87, p. 12. The Defendants responded to Plaintiff's evidence with a Motion for Sanctions and an additional declaration from Betty Rogers. See Doc. 91; Doc. 91-1.

4

In the previous Report and Recommendation, the Court considered evidence outside the pleadings, including: (i) a copy of Plaintiff's grievance history (Doc. 20-2, p. 29); (ii) the affidavit of Ramika Christian, Deputy Warden of Care and Treatment at Pulaski State Prison (Doc. 20-2, pp. 2-5); (iii) a copy of the Georgia Department of Corrections Standard Operating Procedure for Statewide Grievances (Doc. 20-2, pp. 6-28); (iv) the affidavit of Betty Rogers, Pulaski State Prison Health Services Administrator, which indicates that Plaintiff filed only one health grievance while incarcerated at Pulaski State Prison from 1/12/11 to 2/4/14 (Doc. 20-3, pp. 2-4); and (v) a copy of the Georgia Department of Corrections Standard Operating Procedure for Inmate/Probationer Health Concerns or Complaints (Doc. 20-3, pp. 5-7).

The evidence establishes that Plaintiff was very familiar with the grievance process, and filed six grievances between 01/05/2011 and 07/28/2014. Doc. 20-2, p. 29. It is apparent that Plaintiff is familiar with the appeal process, as her grievance at Arrendale State Prison, filed on 02/06/2014, was denied on appeal. *Id.* Plaintiff's grievance history at Pulaski State Prison reveals only one filed grievance for a missing property claim, which was resolved. *Id.* There were no grievances filed related to the adequacy of medical care, or for staff negligence. *Id.* at 4.

Betty Rogers, in her affidavit, further affirms that Plaintiff also used the procedures outlined in the Georgia Department of Corrections Standard Operating Procedure for Inmate/Probationer Health Concerns or Complaints. Doc. 20-3, p. 4. She states that Plaintiff filed only one health complaint while incarcerated at Pulaski State Prison, concerning a co-pay charge that was imposed even though Plaintiff had refused treatment. Doc. 20-3, p. 4.

As the District Court found in its Order adopting the Report and Recommendation:

> In her numerous (and at times conflicting) accounts of what she did to exhaust her administrative remedies, the Plaintiff appears to only reference a formal grievance being filed and denied in her second objection to the Recommendation. She consistently alleges she filed a grievance at the counselor's level and wrote an

5

> "ante litem" letter to the Warden but appears to only mention a formal grievance in her second objection. She has insisted she keeps copies of all her documents, but the only grievance documents she has provided are the counselor's level receipt and the appeal. Therefore, *the Court finds there is no evidence she filed a formal grievance*, which was a necessary step in the grievance procedure in effect at the time.

Doc. 55, p. 5 (internal citations omitted) (emphasis added). Similarly, the Court cannot now find that she filed a formal grievance as to her complaints regarding Dr. Nichols and GCHC.

The only additional piece of evidence Plaintiff has presented to show that she filed a formal grievance is a "settlement letter" allegedly written and signed by Betty Rogers, confirming that Plaintiff exhausted her administrative remedies, and offering Plaintiff $250,000.00 to drop her lawsuit. Doc. 87, p. 12. In rebuttal, Defendants present a second declaration from Betty Rogers, specifically addressing Plaintiff's newly presented evidence. Doc. 91-1. In her declaration, Betty Rogers testifies that she did not write the document (*Id.* at ¶ 5), that she did not sign the document (*Id.* at ¶ 6), and that the signature on the document is a forgery (*Id.*).

In resolving the disputed issue surrounding the letter, as the Court must at step-two of *Turner*, the Court finds that the "letter" from Betty Rogers is either edited, forged, or entirely fake, and does not show that Plaintiff filed a formal grievance. First, the letter contains mirrored paragraphs of Ms. Rogers' declaration. Compare Doc. 87, p. 12 with Doc. 20-3, p. 3. The language is disjointed and poorly worded, and the letter is undated. Furthermore, the offer of a $250,000 "private agreement" is not credible, and cannot be reconciled with this Court's experience of other settlement offers from the Department of Corrections. Finally, given Plaintiff's numerous conflicting accounts of exhaustion, and constantly changing narrative, and in light of Betty Rogers' second declaration, this Court cannot find that Plaintiff filed a formal

grievance, and her complaint must be dismissed for failure to exhaust her administrative remedies.

## III. DISMISSAL IS APPROPRIATE BECAUSE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND DEFENDANTS ENJOY QUALIFIED IMMUNITY.

Plaintiff's complaint is also subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure because it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The instant *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted).

  A. Civil Actions Under 42 U.S.C. § 1983

Plaintiff brings her action under Section 1983 of Title 42 of the United States Code, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute creates no protected rights, but instead provides a remedy for a violation of constitutional rights committed under color of state law. There is no debate that

Defendants were acting under color of state law during all the events pertinent to this case. Thus, the issue under consideration is whether Defendants violated Plaintiff's constitutional rights. Even assuming, however, that Defendants violated Plaintiff's constitutional rights, Defendants may still enjoy the protection of qualified immunity against claims brought against them in their individual capacity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Courts employ a two-part framework to evaluate qualified immunity claims.[2] In order to deprive a defendant of qualified immunity, a plaintiff must demonstrate both that a constitutional violation occurred and that the constitutional right violated was clearly established.[3] *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may analyze those two questions in whatever order is most appropriate in the case before it. *Pearson v. Callahan*, 555 U.S. 223 (2009).

B.  Plaintiff did not suffer a constitutional violation

Plaintiff alleges that Dr. Billy Nichols, as medical director of GCHC, hired Dr. Nazaire without a proper background check. Doc. 29, pg. 2. Before Dr. Nazaire was hired, Plaintiff states that Dr. Nazaire was linked to four malpractice cases in the State of New York and was sanctioned by the New York Medical Board as a result. *Id.* Plaintiff alleges Dr. Billy Nichols was responsible for the operation of GCHC and knew of Dr. Nazaire's past history. Plaintiff fails to allege that Dr. Nichols hired Dr. Nazaire, but attempts to impose liability on him based on the theory of *respondeat superior*, which does not support a claim for relief.

---

[2] There is an often overlooked requirement that precedes that two-part inquiry: whether Defendant was acting within the scope of his discretionary authority. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear that the officers were operating within the scope of their discretionary authority in administering care to inmates.

[3] At the motion to dismiss phase, the Court answers these two questions taking the facts in the light most favorable to the plaintiff.

8

To impose Section 1983 liability based on a hiring decision, a plaintiff must demonstrate that a government actor disregarded a known or obvious consequence of hiring an applicant. See *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1313 (11th Cir. 2001). It is not sufficient under this standard that a government actor's inadequate screening of an applicant's record reflects an "indifference" to the applicant's background. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 411, 117 S. Ct. 1382, 1392 (1997). Rather, a plaintiff must demonstrate that the hiring decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right *will* follow the decision. *Id*.

Plaintiff does not allege that the decision to hire Dr. Nazaire reflects deliberate indifference to the risk that a violation of her particular constitutional or statutory rights would follow the decision. At most, the knowledge of Dr. Nazaire's professional past would reflect "indifference" to his background. Similar hiring decisions have been addressed by the Eleventh Circuit, and the appellate court has declined to extend liability. See *Thompson v. Sheriff, Pinellas Cty. FL*, 542 F. App'x 826 (11th Cir. 2013).

In *Thompson*, a plaintiff, through counsel, brought suit against the Pinellas County Sheriff's Office. *Id.* at 827. His claims arose out of an unconstitutional use of force by a deputy sheriff, on which the district court granted summary judgment for the defendant. *Id.* On appeal, plaintiff-appellant argued that the Sheriff's Office should be held liable for the Sheriff's "deliberately indifferent" decision to hire the offending deputy sheriff, because he failed to adequately scrutinize the deputy's background. *Id.* In relevant part, the deputy had admitted to: (1) spending seven days in an Erie, Pennsylvania jail in 1990 for trespass and misdemeanor harassment; (2) operating his motor vehicle under the influence of alcohol on at least four occasions, (3) using marijuana on two occasions; and (4) having his driving privileges

9

suspending twice. See Brief of Appellant at 55, *Thompson v. Sheriff, Pinellas Cty. FL*, 542 F. App'x 826 (11th Cir. 2013) (No. 13-10101). In its opinion, the Eleventh Circuit was not persuaded, and "summarily reject[ed] plaintiff's argument in this regard." *Thompson.* 542 F. App'x at 827. The opinion "conclude[d] that *Bd. of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382 (1997), foreclose[d] plaintiff's position."

In the same regard, Plaintiff's claims against Dr. Nichols and GCHC are subject to dismissal in light of *Brown*. Plaintiff states that Dr. Nazaire is responsible for "more than 23 deaths at Pulaski State Prison," that he is reckless and heartless, and that she believes he is not a certified doctor. Doc. 87, p. 5. She concludes that since Dr. Nazaire was on probation from the State of New York when GCHC hired him, "that in itself is deliberate indifference." *Id.* A government agency cannot be held liable, however, "solely because it employs a tortfeasor." *Brown*, 520 U.S. at 403, 117 S. Ct. at 1388. Even if GCHC and Dr. Nichols knew of Nazaire's past, and Nazaire violated Plaintiff's constitutional rights, those facts alone are not enough to impose liability for their hiring decision.

Further, Dr. Nichols and GCHC are "not liable under § 1983 for the unconstitutional acts of [their] subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). Rather, "supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id*. The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003)

(quoting *Braddy v. Fla. Dept. of Labor & Employment*, 133 F.3d 797, 802 (11th Cir. 1998)); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). Alternatively, the causal connection may be established when a supervisor's "'custom or policy ... result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1234 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991)); "The standard by which a supervisor is held liable in h[is] individual capacity for the actions of a subordinate is extremely rigorous." *Gonzalez*, 325 F.3d at 1234 (internal quotation marks and citation omitted).

Plaintiff does not allege that Dr. Nichols or GCHC *personally* participated in the alleged unconstitutional conduct performed by Dr. Nazaire. Neither does she point to a causal connection between her alleged constitutional violations and GCHC or Dr. Nichols. These assertions, without more, "fail to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570; *Cottone*, 326 F.3d at 1360; *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (holding that a hospital cannot be held liable under 42 U.S.C. § 1983 for the conduct of its employees).

## CONCLUSION

Because: (1) the PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 90, 93–97; (2) the Defendants have met their burden set out by the Eleventh Circuit of demonstrating that Plaintiff did not exhaust her administrative remedies; and (3) Plaintiff fails to state a claim upon which relief may be granted, it is **RECOMMENDED** that Plaintiff's complaint be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation to Dismiss with the District Judge to whom this case is assigned, **within fourteen (14) days** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 24th day of August, 2016.

>   s/ Charles H. Weigle
>   Charles H. Weigle
>   United States Magistrate Judge